Gentlemen, our first case for argument, Koziara v. BNSF Railway. Ms. Holmes. Good morning, Your Honors. May it please the Court, Jacqueline Holmes for the appellant, BNSF Railway Company. Could you speak a little louder, please? Yes, I will. I'm sorry, Your Honor. No, it's not the microphone. It's your voice line. It's me? Okay, understood. This case gets here because the plaintiff, Mr. Koziara, sued his employer, BNSF Railway Company, for violations of the Employee Protection Provisions of the Federal Railroad Safety Act, which are contained in 49 U.S.C. 20109. Mr. Koziara challenged a suspension that he received and a dismissal as violating those provisions. I would like to focus on two principal errors in the judgment below. The first is the district court's decision to grant summary judgment to Mr. Koziara on one of the elements of his burden of proof, the contributing factor element. And the second is the district court's refusal to grant BNSF's motion for judgment as a matter of law as to its affirmative defense with regard to its decision to dismiss the plaintiff for theft. First, with regard to the summary judgment decision, I believe the district court erred in two respects. First, he applied the wrong legal standard. And second, he failed to take the record evidence in the light most favorable to BNSF, as he was bound to do as BNSF was the non-moving party at summary judgment. The Federal Railroad Safety Act, with regard to the legal standard, prohibits discrimination based on protected activity. In that regard, the text of the act says that a railroad carrier may not discharge or in any other way discriminate against an employee if such discrimination is due in whole or in part to protected activity. To be sure, discrimination need only be a contributing factor. It does not need to be the principal factor or the main factor or the only factor, but it does need to be a factor. And I think the definition of contributing factor that the courts have routinely used, including this one, sort of helps us understand a factor in what. The contributing factor standard, again, as this court and others have articulated it, is any factor, or loaner in combination with other factors, that tends to affect in any way the outcome of the decision. What's the decision? The challenged discipline. So under this statute, the contributing factor that the employee has to show is discrimination based on the challenged discipline. Here, the district court articulated discrimination as a requirement, but didn't really apply it. Instead, what the district court said is the mere fact that BNSF would not have uncovered the underlying rule violations for which it disciplined the plaintiff, but for his protected conduct, that that was sufficient as a matter of law to show discrimination and to show retaliation based on protected activity. No other court has gone that far. Admittedly, the appellate court... Would you bring McKinnon against Nashville banner to the district judge's attention? I don't know, Your Honor. I suspect the answer is no because it's not in your brief. But McKinnon is a case in which the Supreme Court dealt with this very question and resolved it. And here we are in the Seventh Circuit. No one has cited McKinnon. No one informed the district judge that this question had been asked and answered in the Supreme Court. I'm pretty disappointed. I apologize, Your Honor, for that. I'm not aware of that case. You may need to apologize to your client because the Supreme Court ruled in your favor. But if you haven't alerted the district judge to this, the argument may not have been preserved. I think, Your Honor, it may not have been preserved as to that case, but I think the argument has been preserved. We clearly have taken the position all along that this is not enough to show a contributing factor as a matter of law. And again, I do apologize to the court for not bringing that case to your attention. I was not aware of it, and I assume that trial counsel was not either, but I don't know. But I do think that we have preserved the issue of whether this is enough as a matter of law. And admittedly, the appellate decisions on the Federal Railroad Safety Act are limited, but I think if you look at Araujo, which is the Third Circuit's opinion, which is the one that I think everybody would agree articulates the standard in the way that's the most favorable to the plaintiff, even Araujo does not come close to going as far as the district court went here. And so I think that, you know, the facts of Araujo were overturning a defendant, a grant of summary judgment to the defendant based on not only temporal proximity, as it's sometimes characterized, but also other facts, including the fact that the employer, again, taking the facts in the light most favorable to the plaintiff, the employer had the information it needed to charge the employee and before he was injured, did not issue the charge, and then issued the charge after he was injured. So those facts were, again, enough to get a judgment for, to overturn summary judgment for the defendant, but not to enter judgment for the plaintiff as a matter of law. Even the Administrative Review Board, which admittedly has gone further, has not gone as far as the district court here. The Administrative Review Board cases that have been cited to you, all of which were either overturning summary judgment for the defendant or after a trial on merits. But what's your basis for asking for judgment as opposed to a trial? So the basis for asking for judgment would be on the clear and convincing evidence defense, Your Honor. We acknowledge that on the contributing factor, what we would be asking for is a new trial. So if you rule in our favor and hold that the district court erred in granting summary judgment to the plaintiff on contributing factor, I think the remedy would be a new trial. If you hold in our favor, if you hold in our favor on the affirmative defense and hold that we have proven that affirmative defense is a matter of law, then I think the remedy, at least as to the dismissal, would be judgment in our favor. And the affirmative defense is what? So the affirmative defense is that we have the opportunity to show by clear and convincing evidence that we would have taken the same action notwithstanding the protected conduct. What the district court said was needed. Well, I don't understand. What is your evidence for that? Sure. So the evidence for that is? You always fire someone who gives away these timber, whatever they are, these strips of wood.  We presented multiple examples, including individuals who stole ties, who were fired for theft. But there's also evidence that this theft is common and the supervisors look the other way, they don't care. So I don't think there is, with all due respect, Your Honor. I think there is evidence that employees took ties with permission. There's no question about that. With permission? With permission, that's correct. What does one do with a railroad tie? I think there was some record evidence, I believe, and what I don't remember, candidly. With permission? Who gives permission? A supervisor can give permission or a contractor can give permission. Here, Mr. Kosiara didn't even allege that he took them without permission, right? He said, I had permission, and his supervisor said, you didn't have permission. And the BNSF decision makers who are up the chain from the supervisor reasonably believe the supervisor. You allow thefts by some people but not others, as I understand what you're saying. No, not at all. That looks like a clash of testimony. So I think that there is a difference in testimony, for sure. I think the question is, what standard are you applying? What's what? What standard are you applying? It also looks like a denial of misconduct, which is never enough. One of them is telling the truth. The other isn't, right? Do we have juries for it? But what the cases have held is that in the context of the affirmative defense, you have to look to what the employer reasonably believed and what evidence the employer was looking to. Kim v. Boeing from the Ninth Circuit goes to that point, as does the Feldman case from the Fourth Circuit. I realize those are not from this circuit. I don't know what that means, the employer reasonably believed. Does that mean he didn't believe but it would have been reasonable to believe? There's no evidence of belief or disbelief but it would have been reasonable? Is that what you're saying? I think it's that there's no evidence that they didn't actually believe it is really what it means. That might be a better, cleaner way to say it. So, again, I do think that on the affirmative defense, there is ample evidence in this record. But if he says he was allowed to take these things and they say no, why isn't that a simple clash of testimony? Because I think just like in any discrimination case, you have to look at this from the employer's perspective and the perspective of the decision maker. What does that mean? Perspective of the decision maker. The question is whether, who is telling the truth? Well, I think the question is whether based on this sort of evidence, what would this BNSF decision maker have done had there been no injury report? If he had this same evidence and there had been no injury report, what would he have done? And the answer is clearly, he would have dismissed. Why do you say clearly? How many people have been dismissed because they took these ties? There was record evidence of three that were dismissed for taking without permission. Three? How many employees does BNSF have? A number, but there is no evidence. Thousands, right? Thousands, 30,000 or so. But, Your Honor, there is no evidence of anyone who took ties without permission and wasn't fired. They say it happens every day. Why didn't they come up with one person who could testify to that fact? Who would testify to what? That they took ties without permission and weren't fired. They didn't have any, there is no evidence of that, none in this record. Well, you can see why they would be reluctant to testify. Maybe, unless they were, you might have a retired employee who would be willing to testify. No one is going to testify to that, right? I took this without permission and I wasn't fired. Be fired the next day, right? Well, I don't know. Well, look, think of it, be sensible about it. You're going to testify that you stole stuff from the company and you weren't fired? You're going to testify to that? And what's the company going to say? Oh, well, we made a mistake. You've agreed you've stolen it, so you're fired. Well, it might be the case that that wouldn't happen, but I understand your point. Come on, be realistic. No one is going to say, I stole, I wasn't fired, I got away with it, right? Well, but again, the question is, you know, at a certain point, if you don't accept evidence like this and you hold that as a matter of law, anytime somebody files an injury report, any rule violations that are uncovered thereafter are essentially protected by the FRSA and the plaintiff's met his burden of proof, you ultimately are immunizing people for the consequences of their rule violations, which is what the cases, legions of cases, starting with Murano, which started with me. You're into your rebuttal time. You can use it any way you want, but you're into it. Yes, thank you, Your Honor. I'll be very brief. I do think that you start to immunize people, and there are legion cases starting with Murano and others that say the purpose of the whistleblower statutes is not to immunize people from the consequences of their own misconduct. Many, many cases say that. That's why you're not going to get anybody to testify. Okay, I appreciate it. I will reserve the remainder of my time unless there are further questions. Okay, thank you, Ms. Hall. Thank you. Mr. Morgan. Thank you, Your Honor. Thank you. May it please the Court. Matthew Morgan from Nichols-Castor on behalf of the plaintiff, Michael Kosiera. Counsel raised two issues that she wanted to discuss this morning. I'll start with the latter, but first apologize to the Court. The McKinnon case wasn't cited in our brief either. As I said to Ms. Holmes, it's not a question of apologizing to us. There may be a need to apologize to the litigants. They're the ones whose interests are to be protected. I understand, Your Honor. We're just here to decide. We still have an obligation of candor to the tribunal, and I take that serious. Do you have any response to McKinnon? I don't. The jury instruction told the jury, all you have to do is figure out whether the injury report was in the chain of causation. If it was, then the railroad can't fire the plaintiff, even if it would have fired a person for theft otherwise. McKinnon, although it deals with a different statute, announces for employment discrimination statutes in general that that is not the law. And it says even if the wrong, the employment wrong, was in the chain of causation, if even in the course of litigation you discover that the employee has committed a firing offense, he can be fired then and there. That's the holding of the Supreme Court. The jury instruction in this case is totally incompatible with McKinnon. So where are we? Well, I'm taking your Honor's word for the correct recitation of the case and what it stood for, and I would submit that the instruction would be consistent with that decision. No, it's not consistent with McKinnon. Don't quibble with me about a case you haven't read. The question that I'm asking is, what do we do about the fact that nobody called this to the district judge's attention? Well, I don't think it deserves a remand to the district court, and here's why. If a plaintiff prevails on his or her prima facie case under the FRSA, he doesn't win liability. At that point in time, the burden is still... No, maybe we need another jury trial. But the immediate question I'm asking you, I hope my question isn't too obscure, are you arguing procedural default by the railroad? I'm not arguing procedural default by the railroad. I'm simply contending that under the theory, the chain of events theory of liability, under contributing factor in the Air 21 framework, Judge Peterson correctly ruled in our favor on summary judgment. And I think the comments that counsel concluded with in remarks to Judge Posner's questions deals with or addresses that so-called parade of horribles argument, because liability is not determined once a plaintiff meets his prima facie case. The railroad still can prove by clear and convincing evidence that it would have disciplined, notwithstanding the protected activity. That is what the jury was instructed in the Kosiora case. They had the ability to evaluate all of the evidence we're talking about. And by the way, it's the same evidence on the clear and convincing standard that was just discussed with your honors on the record in connection with the clear and convincing standard. That's the same evidence on contributing factor. It's not as if the jury didn't hear any evidence, that any evidence was excluded. Candidly, the question is really can a plaintiff in this context meet his or her contributing factor element to the prima facie test by showing that. Does it make sense for the employer to investigate anybody who is injured? I don't think so. Well, I think so because the fact the person is injured could be due, could be just an accident, but could be due to something about him. Maybe he's not careful. Maybe he could endanger other people. So I say why wouldn't it be sensible to investigate anyone who was in an accident? I guess it's to the degree of the injury or the accident, Your Honor. I think the prudent course for an employer would be to investigate. And in this case, we aren't challenging the investigation. The employer certainly has the right to investigate any accident or injury that occurs. The question is what is done with the information. But if in the course of the investigation you discover that the person is a thief or something like that, isn't that an appropriate basis for discipline? It is. But the way the framework. The jury was told otherwise. The jury was told that if the railroad would not have investigated a person but for the injury report, then that's all the plaintiff needed to show. With regard to the suspension. That's correct. But as I understand what the defendant is challenging on appeal is the termination. And the termination was this issue of stealing or taking track ties was discovered in connection with the injury investigation. But so was. Well, my response to your question is the employer under the framework still gets a chance to prove that it would have disciplined notwithstanding the protected activity. And so long as they can articulate the reasons why. That doesn't sound like what the jury was told. Okay. I believe it was. I mean, I believe the instruction was clear that the railroad could. That the jury could find in favor of the defendant so long as the defendant proved by clear and convincing evidence it would have taken the same conduct. Namely, for the purposes of appeal, the termination. Notwithstanding the protected activity. Had there been no injury report. But the railroad concedes it would not have investigated your client but for the injury report. That's right. So the upshot of the jury instructions was that if the injury report was in the chain of causation. If it led the railroad to investigate. Then the railroad can't impose discipline or fire your employee no matter what it found. Okay. No matter what it would have otherwise done. That's not the law. No, it's not the law. And I don't believe that. But it is what the jury was told. Okay. I disagree with that interpretation, Your Honor. I think the jury clearly understood that BNSF could avoid liability in this case. By showing that they would have taken the same action otherwise. And what we did at that point is what we do in debate in the McDonnell Douglas framework. What do you mean by take the same action? Terminate him. And frankly, what we've been talking about is comparator evidence. They produced not one person. One example of a person who took or stole track ties and was terminated. Not one. There was also evidence in the record that other folks were standing adjacent or similarly close to Mr. Kozira when he was injured. When you say other people who took ties, were they given permission to do it? Or did they just steal them? I think both. As part of the investigation into the rule violations. You're saying the company does never punish people for stealing from it? No. We're saying that they don't punish for taking track ties. Well, that is stealing. It is. And they brought evidence out that they do discipline for stealing. So the company is indifferent to having their employees steal? Track ties? Yeah. Yeah. I mean, that's what the evidence showed. And that Mr. Kozira, because of the injury, was singled out. And it shouldn't be lost that he was given permission by his supervisor. And that was a hotly contested issue at trial. But his testimony has consistently been that he had permission to take the ties. And his supervisor admitted having permitted him to do so? No. He denied it. Pardon? He denied it. And it was, frankly, a question of credibility at that point. The jury heard his explanation and his story about why he terminated. And Mr. Kozira provided his story. And the jury concluded in Mr. Kozira's favor. It's a classic jury trial question. They assessed credibility. But the idea that once we won on the contributing factor element, that summary judgment meant that we went immediately to a damages trial is just not correct. All of these issues were explored, debated, discussed. Was the person who allowed him to, according to him, allowed him to take the ties, was he authorized to give that permission? Yeah. He was a supervisor. Well, wait a second. The supervisor is not authorized to permit theft from the company, surely. Okay. So I guess, could you repeat your question then? I might have misunderstood it. Was his supervisor authorized to let him take the ties? Yes. These were beat-up used track ties sitting on the side of the road. Yeah, but was he authorized by the company to allow employees to take the ties? At one point in time, he was. I think there was some testimony about a form that needed to be filled out and processed with the company in order to authorize. But either he or a contractor, BNSF hires a third-party contractor to come alongside the tracks and pick up the old ties. So as long as he got permission either from the contractor or management at BNSF, my understanding is that that's what the record showed, that it was legitimate for him to do so. Were the ties junk, is that what you're saying? Yeah, they're junk. They were junk. They were beat-up scrap ties. He didn't even keep the ties, Your Honor. He gave them to a farmer friend of his who wanted to, I think, build a surrounding for a garden or something in his backyard. That's what you had asked earlier, why someone would want used beat-up scrap ties. Why does somebody want the smell of creosote in his backyard? That's right. It's an interesting question, but I think people use them for all sorts of things. The La Crosse, Wisconsin area is where Mr. Cozier lived and where this farmer lived. I want to take in the limited time I have on this contributing factor issue because, Your Honor, I was on a panel. Now, why would they fire him for getting injured? Because they'd still have, I mean, he's still entitled to workman's compensation, isn't he? Employees on the railroad aren't entitled to worker's compensation. And so there's that FELA law that exists, and so there's a constant battle about who caused the injury. Because I'm not a FELA lawyer, but as I understand it, causation, contributory negligence is a big deal. And so percentages of who's at fault, whether it's the railroad or the employee, really matter. And that's why these injuries are viewed as so significant of an event at the railroads. And frankly, it's why the amendments occurred in 2007 to the Federal Railroad Safety Act to make this an employee-friendly statute, to make this a quote-unquote tough standard for employers. This was Congress's intention, and I think, frankly, the Cozier case is a perfect example of what Congress had in mind in terms of the burdens on the relative parties when an employee in the railroad industry in this day and age reports a work injury. I really do. So they don't have health insurance or anything? No, they contribute to a railroad retirement board that I understand has some health insurance benefits, but they aren't entitled to worker's compensation. On the contributing factor standard, I think even if the court in its 2009 opinion, Addis v. Department of Labor, defines what contributing factor means. Contributing factor is specifically intended to overrule existing case law. So you're saying that if someone is injured on the job, he doesn't have any compensation recourse against the employer? He can sue the employer if there's a debate about medical expense. But there's nothing in their employment contract that provides any health protection or anything? Under the collective bargaining agreement, I think typically railroads do reimburse for medical expenses, but I know that the worker's compensation system is not available to employees on the railroads. But if they're required to compensate them in some way for the injury, why would they bother to fire them? They still have to pay, right? What do they gain from firing them? What do they gain from firing them? Yeah. They gain, I mean, it goes to the question of motivation, right? No, I don't understand. They get rid of an employee who's stealing. You're saying the company's going to compensate or pay in some way for his medical bills, right? I'm not sure under the collective bargaining agreement that there's an obligation. I think it's typical that the companies do do it. That's kind of important. Suppose there is an obligation. Sure. If there is an obligation, what would the company gain by firing him? Well, if they fire him and they find that he violated rules, then that's a pretty darn good defense on any potential FELA claim resulting from the injury. I mean, the railroads have... I don't understand. He's still been injured. He's been injured. Yeah. So he's entitled to some sort of compensation. Yeah, and I'm not sure that the railroad pays for it or whether it's through some type of health insurance benefit. That's fine. If the company doesn't pay for it, what is its incentive to fire him? I think its incentive to fire... I think its incentive is first to find rule violations that they can attribute the injury to so that they have a proper defense in the FELA context to say, these were rule violations. The negligence, if any, lies with Mr. Kosiera, not with the railroad. Well, that's fine. Do I recall he had a settlement with some of the companies, Aetna, for instance, Blue Cross? Excuse me? Do I recall he settled some of his claims with Blue Cross, Aetna, and so on? Not any of the... I don't know the answer to that question. Maybe with regard to his health insurance or his medical reimbursement for the injury. But medical expenses weren't a claim that we made in this case. He was not reimbursed for any outstanding medical expenses in this case. All right. Unless the Court has any other questions, I see my time is up. Thank you, Your Honor. Okay, thank you, Mr. Morgan. Ms. Holmes? Thank you, Your Honor. First, I'd like to give you a little bit of factual information from the record that is responsive to some of the questions you asked, Mr. Morgan. First of all, with regard to the medical services, the defendant's proposed statement of fact, paragraph 84, said BNSF duly paid for all medical expenses provided to Kosiara. I'm sorry. Could you speak slowly and louder, please? Yes. I apologize, Your Honor. BNSF's proposed findings of fact, and this was supported by Mr. Kosiara's deposition transcript, and I'm reading from the appendix at page 12, proposed finding of fact 84, BNSF duly paid for all medical services provided to Kosiara following its receipt of his personal injury report. Second, with regard, Judge Posner, to your questions regarding Mr. Vietz's authority, this comes from the plaintiff's proposed findings of fact at summary judgment in the appendix at 54, paragraph 82. Had Vietz, Kosiara's supervisor, acknowledged he had given Kosiara permission to give the ties away, such permission would have violated BNSF's rules and Vietz could have been subject to discipline. So that's responsive to one of the factual questions that you asked, Mr. Morgan. Well, Mr. Morgan suggested these ties that are given away are just junk. He says that. That's not the company's position, and in any event, the company takes a very hard line when it comes to that. The examples that were given at trial were things like scrap metal, employees being dismissed for giving away scrap metal, employees being dismissed for giving away a small box of pencils, a little bit of fuel. It's a very hard line. Good or bad or ill, it's a very hard line. And I think Mr. Morgan did misstate the record as well, and I'd like to clarify. Mr. Rankin did testify that he was aware of three employees who were dismissed for taking ties. That's cited in our opening brief at 34, docket entry 198 at 3A, 42 to 43. So I wanted the court to have that. I think, Judge Easterbrook, with respect to your questions, I don't think there's a procedural default here. It obviously would have been better had we cited the opinion. Mr. Morgan just said that the plaintiff is not arguing procedural default. So if there was a default, it's just been defaulted. Okay. Well, I appreciate that. I do think that we have argued vigorously throughout that this is not sufficient to prove contributing factors are a matter of law, and, yes, we could have done better on that particular case. But I think the argument has been preserved without question. Okay. Well, thank you very much, Ms. Holmes. Thank you, Your Honor.